UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KATHLEEN A. HARRIS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:07CV1165 CDP |
|  | ) |  |
| MICHAEL J. ASTRUE, | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the Commissioner's final decision denying Plaintiff Kathleen A. Harris's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Harris claims that she is disabled because of major depressive disorder. The Administrative Law Judge, however, found that Harris was not disabled. Because I find that the decision denying benefits was not supported by substantial evidence, I will reverse and remand the decision for further consideration.

## Procedural History

On December 22, 2004, Harris filed an application for Disability Insurance Benefits. Harris alleged disability since August 4, 2004 because of major depressive disorder. On November 22, 2005, following a hearing, an Administrative Law Judge (ALJ), found that Harris was not disabled as defined in the Social Security Act, but the Appeals Council of the Social Security Administration vacated that decision. A new hearing was held before a different ALJ, and on February 8, 2007, that ALJ found that Harris was not disabled as defined in the Social Security Act. Harris sought review at the Appeals Council, and the Appeals Council admitted new evidence but denied Harris's claim on May 17, 2007. Therefore, the decision of the ALJ stands as the final determination of the Commissioner.

## Evidence Before the Administrative Law Judge

Harris was 50 years old at the time of the hearing. She had a GED, and her past relevant work was as an electrician. Harris has not engaged in any substantial gainful activity since August 4, 2004. Harris asserts that she became unable to work because of major depressive disorder.

At the most recent hearing, Harris testified regarding her medical condition, and Harris also completed a function report. Harris complained of poor concentration, insomnia, and lack of appetite. She testified that she plays a little

with her grandchildren and does some household activities. She also testified that she has arthritis pain in her knees, shoulders, and thumbs, but she stated that she does not take strong pain relief medication. Instead, she testified that she takes over-the-counter medication for her symptoms.

Harris's daughter, Shannon Albritton, filled out a third party function report about Harris. In her report, Albritton reported that Harris occasionally watches her children. Albritton also reported that Harris needs many reminders to complete tasks, that Harris cannot cook because she has no energy, and that she is periodically confused and forgetful. She also reported that although Harris is able to pay bills, handle her savings account, count change and use her checkbook, doing so takes Harris an extra long time. Additionally, Albritton reported that Harris has developed reading comprehension problems and now avoids social situations. Albritton reported that Harris can only follow simple instructions and that difficult tasks must be written. Finally, Albritton stated that Harris panics in stressful situations.

A vocational expert, Brenda Young, testified at the hearing. The ALJ posed a hypothetical question that asked whether an individual with Harris's characteristics could perform Harris's past relevant work or if there would be any jobs that a hypothetical individual with Harris's characteristics could do. These characteristics

included her age, education, training, past relevant work experience, and limitations. Her limitations allowed her to understand, remember, and carry out at least simple instructions, and non-detailed tasks, and to respond appropriately to supervisors and coworkers in a task oriented setting where contact with others is casual and infrequent. Harris's limitations did not include any physical restrictions. The vocational expert's testimony indicated that such an individual could not perform Harris's past relevant work but could perform work in the unskilled range such as laundry worker or assembler. The ALJ also asked the vocational expert whether Harris would be disqualified from all work if her doctor provided testimony that she was unable to understand, remember, and carry out simple instructions, and the vocational expert testified that she would be disqualified from all work if those conditions applied.

## **Medical Records**

Harris began treatment with Dr. Joseph Thompson, D.O. in August 2004. Harris had not been to work since August 4, 2004, as a result of panic attacks and depression. Dr. Thompson diagnosed Harris with acute stress reaction and major depression, moderately servere, recurrent. When he saw her on August 18, 2004, he noted that she was to be off work from August 4 to August 22 and that she should be rechecked in two weeks. He also noted that she was "doing okay on the Lexapro

and Remeron" but noted that she was "not well enough to go back to work yet." Dr. Thompson saw Harris again on August 30, 2004, and at that time, he extended her disability through October 4, 2004 because she was still having panic episodes.

On September 5, 2004, Harris was admitted to Saint Mary's Health Center. She was treated for depression, anxiety, and suicidal thoughts. At that time, she admitted that she had been abusing Dilaudid from February 2004 until July 2004, when her symptoms appeared. At that time, her daughter also stated that she drank considerably, usually about six beers a day. Harris was diagnosed by Dr. William Irvin, Jr. with major depressive disorder of a recurrent and severe nature with anxiety but without psychosis. At that time, she was found to have limited insight and judgment, and her global assessment of functioning (GAF) score was 20, indicating gross impairment. When she was discharged, two weeks later Dr. William Irvin, Sr. concurred in his son's diagnosis and found that she had an improved GAF of 26.

After her hospitalization, she was seen by Dr. Irvin, Jr. as an outpatient. He continued to diagnose her with major depressive disorder, recurrent, severe, and without psychotic features. He found her to be well-dressed and groomed. He stated that her speech had a regular rate and rhythm, that her flow of thoughts was logical and sequential, that her thought content was free of psychosis and suicidal or

homicidal thoughts, and that her sensorium was clear. His treatment notes indicate that Harris tolerated her medication well and had no side effects.

On March 29, 2005, Harris was examined by Wayne Stillings, M.D. who diagnosed her with narcotic addiction (recovering), major depressive disorder (single episode, severe), panic disorder (with agoraphobia, moderate to severe), and assigned a GAF of 48-52, indicating a serious to major impairment. He stated that Harris had no formal thought disorder and that her speech was sparse, aspontaneous, and slow in tempo. He found that Harris was oriented in all spheres and that her recent and remote memory was intact. He also found her verbal comprehension to be fair, but indicated that she was cognitively impaired by severe depression. He also found that her concentration was impaired and that her insight and judgment were impaired by her level of depression. Dr. Stillings stated that she was prevented from working her past job or any other work as a result of severely impaired concentration.

In November 2006, Dr. Irvin, Jr. completed a Mental Residual Functional Capacity Assessment on Harris. This assessment was not received by the ALJ before his decision, but was accepted into the record by the Appeals Council. Dr. Irvin indicated the Harris was markedly limited in 18 of 20 vocational criteria. He indicated that Harris was markedly limited in her ability to understand, carry out,

and remember very short and simple instructions. He also stated that she was moderately limited in her ability to ask simple questions and was not significantly limited in her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

With regard to her knee, foot, and thumb pain, Harris presented very little medical evidence. An August 4, 2004 x-ray of her knee showed mild degenerative change in the medial and patellofemoral compartment with no significant joint effusion.

## **Legal Standard**

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or because the court would have decided the case differently. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is

substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider: (1) the credibility findings made by the Administrative Law Judge; (2) the education, background, work history, and age of the claimant; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question. Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must

evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, she is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, she is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform her past relevant work. If the claimant can perform her past relevant work, she is not disabled.

If the claimant cannot perform her past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if the complaints are uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

Id. at 1322.

A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. Singh, 222 F.3d at 451. A treating physician's opinion concerning a claimant's impairment will be granted controlling weight, if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Id. While a treating physician's opinion is usually entitled to great

weight, the Eighth Circuit has cautioned that an opinion "do[es] not automatically control, since the record must be evaluated as a whole." Prosch v. Apfel, 201 F.3d at 1013.

The Eighth Circuit has upheld an ALJ's decision to discount or disregard the opinion of a treating physician in situations in which other medical assessments "are supported by better or more thorough medical evidence" or in which a treating physician gives inconsistent opinions that undermine the credibility of the opinions. Id. (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)). In any event, whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations require the ALJ to "always give good reasons" for the particular weight the ALJ chooses to give the opinion. Singh, 222 F.3d at 452; Prosch, 201 F.3d at 1013; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

### The ALJ's Findings

The ALJ found that Harris was not disabled considering her age, education, work experience and residual functional capacity. He issued the following findings:

1. The claimant met the disability insured status requirements of the Social Security Act on August 4, 2004, the date the claimant stated she became unable to work, and continues to meet them through March 2010.

2. The claimant has not engaged in substantial gainful activity since

August 2004.

3. The medical evidence establishes that the claimant has a major depressive disorder with anxiety and an acute stress reaction aggravated by chemical dependence, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P Regulation No. 4. The claimant does not have a severe mental impairment.

4. The claimant's allegations of disabling symptoms precluding all substantial gainful activity are not consistent with the evidence and are not credible for the reasons specified in the body of the decision.

5. The claimant has a residual functional capacity to perform work except for work that involves understanding more than simple and non-detailed instructions. The claimant is able to respond appropriately to co-workers and supervisors, but her interactions with others should be casual and infrequent. There are no exertional and no other nonexertional limitations. 20 C.F.R. § 404.1545.

6. The claimant is not able to perform her past relevant work.

7. The claimant has the residual functional capacity to perform a wide range of work at all exertional levels. 20 C.F.R. § 404.1567.

8. The claimant is 50 years old, which is defined as closely approaching advanced age. 20 C.F.R. § 404.1563.

9. The claimant has completed 12 years of education. 20 C.F.R. § 404.1564.

10. Considering the claimant's residual functional capacity and vocational factors, the issue of whether the claimant has transferable skills is not critical. 20 C.F.R. § 404.1568.

11. Based on the framework of Rule 204.00 of Appendix 2, Subpart P, Regulation No. 4 and the credible testimony of the vocational expert, and considering the claimant's residual functional capacity, age, education, and work experience, she is not disabled. The vocational

expert identified a significant number of jobs that a hypothetical individual with the claimant's vocational factors and residual functional capacity could perform. These jobs have been cited in the body of the decision.

12. The claimant is not under a disability, as defined in the Social Security Act and Regulations. 20 C.F.R. § 404.1520(g).

## **Discussion**

Harris argues that the decision was not supported by substantial evidence. She appears to argue that the ALJ improperly determined her residual functional capacity and that the Appeals Council erred in discounting Dr. Irvin's Mental Residual Functional Capacity Assessment.

Harris correctly notes that the ALJ's discussion contains multiple misstatements or mischaracterizations of the medical record. First, the ALJ indicates that Dr. Thompson's treatment record is not supportive of disability on a twelve-month durational basis because Dr. Thompson indicated that she should be off of work until October 4, 2004. The ALJ assumed this to mean that Dr. Thompson believed that Harris could go back to work on October 4, 2004, but Dr. Thompsons report does not actually state that. In fact, between Dr. Thompson's treatment of Harris in August 2004 and October 4, 2004, Harris was admitted to St. Mary's Health Center for treatment. Harris's medical history indicates that she was in no condition to return to work on October 4, 2004.

The ALJ also considered that Harris's positive response to medication was inconsistent with disability, even though this positive response resulted in an improved GAF of only 26, still within the disabling range.  Further, the ALJ's decision contains misstatement regarding Dr. Stillings's report.  The ALJ stated at least twice that Dr. Stillings found Harris's speech to be spontaneous, even though the medical records indicate that her speech was aspontaneous.  The ALJ discounted Dr. Stillings's conclusions regarding disability as inconsistent with his own treatment notes but also correctly noted that Dr. Stillings did not have a treating relationship with Harris.  It is difficult to understand how treatments notes that did not exist could contradict Dr. Stillings's findings of disability.

Finally, the ALJ's decision failed to acknowledge approximately two years worth of treatment notes from Dr. Irvin, Jr.  Those notes indicate that Dr. Irvin, Jr. saw Harris approximately every two weeks for medication management and that he consistently found Harris to have major depressive disorder.  On June 22, 2005, Dr. Irvin, Jr. noted that Harris's GAF was 31, well below the disabling level.  The ALJ did not acknowledge this finding in his decision.  Substantial evidence does not support an ALJ's decision if it cannot be determined what, if any, weight the ALJ afforded the treating physician's opinion.  See McCadney v. Astrue, 519 F.3d 764, 767 (8th Cir. 2008).

The Appeals Council relied on the ALJ decision and upon its belief that Dr. Irvin's opinions were based on Harris's subjective complaints. The Eighth Circuit has previously remanded decisions where the ALJ's decision indicated that the ALJ relied upon misstatements of the medical record in reaching the decision to deny benefits. See Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996). After examining the record, I find that substantial evidence does not support the Commissioner's decision because I am unable to determine what weight was placed upon the misstatements and mischaracterizations of the medical record or what weight was placed upon Dr. Irvin, Jr.'s opinion.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed and remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further development of the record.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of June, 2008.